## Wytheville.

# VIRGINIA RAILWAY AND POWER COMPANY v. DAVIDSON'S ADMINISTRATOR.

June 8, 1916.

Absent, Cardwell, J.

1. MASTER AND SERVANT—*Unfit Servant—Negligence—Proximate Cause.*— The mere retention in service of a careless employee does not give rise to a cause of action against the employer for an injury to a third person. This is true even in cases between master and servant where the foundation of the liability is in the employment of incompetent or unfit fellowservants. In all such cases there must be evidence of some intervening negligence which is the proximate cause of the injury. The mere employment or retention of an unfit servant cannot be the proximate cause of an accident. The unfitness must result in some specific act of negligence or incompetency before any liability attaches.

2. BILLS OF EXCEPTION—*Stenographer's Notes—Conflict.*—In case of conflict between a stenographer's notes taken at the trial and the statements in a bill of exception, the latter is conclusive.

3. EVIDENCE—*Admissibility—Objections—Waiver—Motion to Strike.*—Where objection is made to a line of evidence when offered, and the objection, after argument, is overruled, the subsequent cross-examination of other witnesses on the same subject, without formally repeating the objection, and the introduction of rebuttal evidence, do not constitute a waiver of the previous objection, and a motion thereafter to exclude the evidence objected to is a timely and proper mode of further saving the point.

4. MASTER AND SERVANT—*Injury to Third Person—Negligence of Servant— Reputation of Servant for Carelessness—Street Railways.*—In an action by a third person against a street railway company for an injury alleged to have been inflicted through the negligence of a motorman, evidence of the motorman's reputation for carelessness is not admissible. The question at issue in such case is the motorman's negligence at the time the injury was inflicted. If he was negligent at that time and his negligence was the proximate cause of the injury, the company is liable; if not, the company is not liable, regardless of his reputation in either case.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond, in an action of trespass on the case.    Judgment for the plaintiff.    Defendant assigns error.

*Reversed.*

The following instructions were requested by the plaintiff and given by the court:

No. 1.    The court instructs the jury that it was the duty of the motorman in charge of car No. 238 not to run said car upon the streets at a greater rate of speed than 12 miles per hour, at all times to keep a vigilant watch for children and to strike his gong several times in quick succession on approaching withing 100 feet of them, and if the jury believe from the evidence that at the time of the killing complained of the motorman in charge of said car failed in any one of these particulars, and that by reason thereof and as the sole proximate cause thereof George Davidson was killed, then the defendant was guilty of negligence, and you must find for the plaintiff.

No. 2.    The court instructs the jury that it was the duty of the defendant to keep a lookout on its cars, and if they believe from the evidence that the motorman of car No. 238 saw, or by the exercise of ordinary care could have seen, that the child was in the street and in danger of being struck by the car, and could by the exercise of ordinary care have avoided the accident alleged in the declaration, then he was guilty of negligence, and you must find for the plaintiff.

No. 3.    The court instructs the jury that it was the duty of the defendant to use reasonable and ordinary care to retain prudent, sober and careful men to operate its cars as motormen, and if they believe from

the evidence that the defendant failed in this respect, and that by reason and as the proximate cause thereof the Davidson child was killed, then the defendant was guilty of negligence, and you should find for the plaintiff.

No. 4. A street railway company has the mere right to use the streets in common with the public generally, and in using the streets the speed of a car ought to be no greater than is reasonable and consistent with the customary use of the streets by the public with safety; and where little children are playing in the street, or the motorman has a right to expect them to be playing there, then it was the duty of the motorman to exercise ordinary care to keep his car under such control as to avoid injuring them. And if the jury believe from the evidence that at the time of the accident complained of the motorman in charge of car No. 238 knew that little children were playing in the street, or had a right to expect them to be playing there, and failed to exercise such care to avoid injuring them as a reasonable prudent man would under all the circumstances of the case, by not reducing the speed of his car to such an extent as to keep it under control, and that by reason of his failure so to do the Davidson child was killed, then he was guilty of negligence, and you must find for the plaintiff.

No. 5. The court instructs the jury that a child aged five years and three months is incapable of contributory negligence, and if the jury believe from the evidence that George R. Davidson was five years and three months old at the time of his death, no negligence in contributing to his death can be imputed to him.

No. 6. If the jury should find for the plaintiff they may, in ascertaining damages, not to exceed $10,000, consider compensation for the loss, attention, and

society of the deceased to his family. And they may add such further sum as they may deem fair and just by way of solace and comfort to his family for the sorrow, suffering and mental anguish occasioned to them by his death; and the jury may direct in what proportion the said damages, if any, shall be distributed to the brother and sisters of the deceased.

The following instructions were requested by the defendant and given by the court, except instruction E, which was refused:

A.   The court instructs the jury that the mere fact that the child was killed, as the result of being run over by a street car operated by the defendant company, raises no presumption whatever that the accident was the result of the negligence of the defendant company, and the burden is on the plaintiff to affirmatively prove by a preponderance of the evidence and to the satisfaction of the jury that the defendant was guilty of negligence, of which the accident in question was the natural and probable consequence. And if the jury believe that the death of the cihld was not the natural and probable consequence of any negligent act of the motorman, or if they believe from all the evidence that the child, without previous indication of its intention so to do, suddenly left the other children on the south side of the street and crossed the track in front of the approaching car when the car was so close upon him that the motorman, in the exercise of that care which an ordinarily prudent motorman would exercise under similar circumstances, could not stop the car in time to avert the accident, they must find for the defendant company.

B.   The court instructs the jury that if they believe from the evidence that the motorman after he saw or in the exercise of reasonable care could have seen the

plaintiff's intestate start towards the track he did everything in his power to avoid the accident, they must find for the defendant.

C.   The court instructs the jury that if they believe from the evidence that the car was proceeding eastwardly on Ashland street, and that suddenly and without warning the child who had been upon or near the sidewalk on the south side of the street, turned and proceeded northwardly across and in front of the car when it was so close upon him that it could not be stopped in time to avert the accident, they must find for the defendant.

D.   The court instructs the jury that it was not incumbent on the motorman to slacken the speed of the car until in the exercise of reasonable care he should have reason to think that the child was going in front of the car, and if they believe that when the child started to go in front of the car it was so close to him that it could not in the exercise of proper care be stopped, they must find for the defendant.

E.   (Refused).   There being no evidence in this case that the street car was over thirty feet from the child when the child started to cross the street, the court instructs the jury that if they believe from the evidence that an ordinarily prudent motorman could not have stopped the car within thirty feet under similar circumstances so as to have avoided striking the child, they must find for the defendant company.

The defendant also moved the court to instruct the jury to disregard the fourth, sixth, seventh, eighth, ninth and tenth counts of the declaration.   The court refused to instruct the jury to disregard either the fourth or the sixth count, but as to the other counts mentioned gave the following instruction:

The court instructs the jury that there being no evidence to sustain the seventh, eighth, ninth and tenth counts of the declaration, they are directed to disregard said counts.

*H. W. Anderson, Thomas P. Bryan* and *A. B. Guigon,* for the plaintiff in error.

*Hunsdon Cary,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

The plaintiff's intestate, a little boy five years of age, was killed by a street car owned and operated by the Virginia Railway and Power Company. In an action against the company, charging that his death was due to the defendant's negligence, there was a judgment for the plaintiff, which is before us upon a writ of error.

There were eight assignments of error. The first three related to the giving or refusing of instructions to the jury, and may be disposed of without any extended discussion, except as to instruction No. 3 given for the plaintiff, and an unnumbered instruction asked for by the defendant and refused, which sought to eliminate the sixth count in the declaration. These two instructions will be dealt with presently. The others involved merely the application of well settled principles of law to the evidence in the case. It is sufficient, therefore, to say with reference to them that a careful consideration of the evidence satisfies us that there was no error in the action of the court in regard thereto.

The fourth and fifth assignments of error are likewise of minor interest, relating to the admission of

certain unimportant evidence which, even if improper, would not warrant a reversal of the judgment.

The remaining assignments, and the two instructions first above mentioned, present in varying form the question of the materiality or relevancy of the motorman's general character and reputation for carelessness and negligence.

The plaintiff's instruction number 3, given over the defendant's objection, was as follows: "The court instructs the jury that it was the duty of the defendant to use reasonable and ordinary care to retain prudent, sober and careful men to operate its cars as motormen, and if they believe from the evidence that the defendant failed in this respect, and that by reason and as the proximate cause thereof the Davidson child was killed, then the defendant was guilty of negligence, and you should find for the plaintiff."

This instruction we think was erroneous. The mere retention in service of a careless employee does not give rise to a cause of action against the employer. This is true even in cases between master and servant where the foundation of the liability is in the employment of incompetent or unfit fellow-servants. In all such cases there must be evidence of some intervening negligence which is the proximate cause of the injury. The mere employment or retention of an unfit servant cannot be the proximate cause of an accident. The unfitness must result in some specific act of negligence or incompetency before any liability attaches.

There are some authorities which hold that *evidence* of general incompetency or carelessness may, under special circumstances, be introduced as tending to show that the conduct of a servant on a particular occasion was wrongful, but this is a very different proposition from that contained in the instruction in

question, which left the jury free to believe that the retention of a careless employee could in itself be regarded as the proximate cause of the accident.

The defendant sought to avail itself of the same question by having the jury instructed to disregard the sixth count in the declaration, which charged a breach of the duty to use care in employing servants. The ground upon which, as to this aspect of the instruction, the court was asked to so charge the jury was that the count in question failed to state a cause of action. Other allegations therein, however, sufficiently charge a failure properly to control the speed of the car, and this is the real gravamen of the complaint in that count. The point seems not to have been made in the lower court that good and bad grounds for recovery must not be blended, and for this reason there was, perhaps, no reversible error in refusing the instruction. But if the case is tried again, the court, if so required, should require the allegation as to employment of servants to be stricken out.

The court, over the objection of the defendant, permitted certain evidence to go to the jury, and likewise subsequently refused to exclude the same, as to the general reputation of the motorman for carelessness and recklessness in his work.

The first witness who testified on this point was R. B. Walton, Jr. He was permitted to state that the motorman in charge of the car had the reputation of being very careless. Upon cross-examination his testimony, as appears from the record, was left in doubt upon this particular subject. The stenographer's notes would indicate that all of the statements of the witness as to the motorman's reputation for carelessness were excluded upon the defendant's motion, and counsel for plaintiff contends that this is true. The

bill of exceptions, however, subsequently signed by the court, shows that the objection to Walton's testimony in chief was insisted upon and overruled, and does not show anything to the contrary. This is conclusive upon us.

After the examination of the last named witness four others were called by the plaintiff and testified to the same effect. No objection was offered at the time, and they were cross-examined at length. Furthermore, the defendant afterwards elicited from one of its own witnesses testimony that the motorman was careful and competent, and bore that general reputation. Under these circumstances it is insisted by counsel for plaintiff that, conceding the evidence to be illegal, the defendant waived the objection theretofore made, and also deprived itself of the right to have the court sustain the motion which it made at the conclusion of the testimony to exclude all evidence relating to the motorman's general reputation.

We do not think the objection was waived. The bill of exceptions which sets forth the testimony of the witness, Walton, on this point, shows that at the very first offer of the plaintiff to prove the motorman's general reputation the defendant specifically and earnestly objected on the ground that such evidence "was immaterial and irrelevant, and that the defedant was only responsible to the plaintiff for the act of the motorman at the time of the accident complained of, and that any general reputation he may have for either carelessness or carefulness was not properly admissible." The court heard argument of counsel upon the question and then admitted the evidence. In this state of the record we have no hesitancy in holding that the subsequent cross-examination of other witnesses on this subject, without formally re-

peating the objection, and the introduction of rebuttal evidence by the defendant did not waive the previous objection, and that the motion to exclude was a timely and proper method of further saving the point.

"Objection to the erroneous admission of evidence is not waived by introducing rebutting evidence, although it be of the same kind, or by cross-examination in relation to the objectionable matter . . . Where an objection to evidence is distinctly made and overruled, it need not be repeated to the same class of evidence to save the objection, although the question is asked of another witness."   38 Cyc. 1398, 1399, and many authorities there cited.

We come, therefore, to the question of substance. Was the evidence of the motorman's reputation for carelessness material and relevant to the issue between the parties?

There is considerable apparent and some real conflict in the authorities upon this question.   It will generally be found, we think, that those which are cited as approving character evidence in negligence cases have related to actions by a servant against his master for injuries resulting from the negligence of a fellow-servant.   In such cases the liability is fundamentally affected by the relationship of the parties. Unlike a stranger, the servant cannot recover at all for the negligent act of the fellow-servant until he has laid the foundation by alleging and proving that the master breached the non-assignable duty of using proper care to employ competent and fit employees. In laying this foundation, the servant may prove that the fellow-servant in default was generally reputed to be unfit.   This is true for the obvious reason that in such cases the character of the servant is directly in issue; and it is this principle, as we apprehend, which

Prof. Wigmore had in mind when he said: "Where, by the substantive law, an employer's liability for injuries done by his employees depends upon his selection of a competent employee, it is well settled in all jurisdictions that the reputation of the employee is receivable to show that the employee's character in respect to competency was known to the employer." (1 Wig. on Ev., sec. 249.)

But, as already stated, even in cases between master and servant, the mere employment of an incompetent or careless servant gives no right of action, and the evidence of the latter's reputation is not admitted as tending to show the specific negligence for which the recovery is sought. That must appear as an independent fact and by independent proof; and the character evidence is admitted for the reasons already stated. In actions brought by a stranger the reason for the rule which permits evidence of reputation does not exist, and the rule itself, therefore, does not apply.

The case of *Big Stone Gap Iron Co.* v. *Ketron,* 102 Va. 23, 27, 45 S. E. 740, 102 Am. St. Rep. 839, relied on by counsel for the plaintiff, illustrates and supports this principle. In that case the opinion shows that the relationship between the plaintiff and defendant (servant and master) was such as to make the liability depend upon the use of due care by the defendant in selecting the surgeon (engaged to render medical and surgical attention to all of the defendant's employees), and it was held that evidence of the surgeon's general reputation for incompetency or negligence would have been proper, not for the purpose of showing that his negligence or incompetency caused the injury, but to show that the defendant failed to perform the primary duty of using care to employ a proper surgeon. But the opinion further shows that in order for the plaintiff

to have recovered in that case, he must also have shown, as an independent fact, that the incompetence of the surgeon was the cause of the injury.

In *Fonda* v. *St. Paul City Ry. Co.*, 71 Minn. 74 N. W. 166, 70 Am. St. 341, as in this case, the plaintiff was a stranger, not an employee, the defendant was a street railway company, and the judgment recovered was for injuries alleged to have resulted from the negligence of the defendant's servants. In the course of the opinion in that case, the court said: "Upon the trial, the court, against the objection of defendant, admitted evidence of the general incompetency of the motorman based on the observations of witnesses who had seen him operate his car on prior occasions. We think this was error. The defendant is liable, if at all, for the acts of its servant upon the doctrine of *respondeat superior*. If the motorman was negligent on this occasion, the defendant is liable, no matter how competent he was or how habitually carefully he had been on other occasions. On the other hand, if he was not negligent on this occasion, the defendant is not liable, notwithstanding that he may have been incompetent or habitually careless on former occasions. The sole issue, aside from that as to plaintiff's contributory negligence, was whether or not the motorman was guilty of negligence at the time of the accident." And further on in the same opinion the distinction between cases of that character and those brought by employees is pointed out as follows: "Many of the authorities cited by plaintiff's counsel are cases where a servant brought an action against his master for injuries caused by the negligence of a fellow servant. In such cases the doctrine of *respondeat superior* does not apply, the gist of the action being the negligence of

the master in employing or retaining an imcompetent servant."

The general rule upon this subject, and the exception to which we have adverted, is stated in 21 Am. & Eng. Eccy. L., at page 523, as follows: "Evidence of the character and reputation of the defendant for care, competency, and skill, or the reverse, is as a rule inadmissible in actions for negligence. But in an action against a master for the alleged negligence of his servant, if the negligence of the master in employing or retaining an incompetent or habitually careless servant is in issue, evidence of the latter's reputation for the requisite characteristics, or the lack of them, is admissible."

Subject to the qualification above recognized, the general rule, and in our opinion the better and safer one, is that evidence of the kind in question is not admissible. *Southern Ry. Co.* v. *Rice*, 115 Va. 235, 248, 78 S. E. 592; 6 Thomp. on Neg. 7883; *Zucher* v. *Whitridge*, 205 N. Y. 50, 98 N. E. 209, 41 L. R. A. (N. S.) 683 Ann. Cas. 1913 D, 1250; 1 Wigmore's Ev., secs. 64, 65; *Southern Ry. Co.* v. *Mason, ante,* p. 256, 89 S. E. 25.

It follows from what has been said that the judgment complained of must be reversed and the cause remanded for a new trial to be had not in conflict with the views herein expressed.

*Reversed.*